IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NORMAN X. BECKER,                        :
                                         :
              Petitioner,                :
                                         :
     v.                                  :    Civ. Act. No. 07-681-JJF
                                         :
PERRY PHELPS, Warden, and                :
ATTORNEY GENERAL FOR THE STATE:
OF DELAWARE,                             :
                                         :
              Respondents.[1]            :

---

Norman X. Becker.  Pro se Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware
Department of Justice, Wilmington, Delaware.  Attorney for
Respondent.

---

**MEMORANDUM OPINION**

July 22, 2010
Wilmington, Delaware

---

[1]Warden Perry Phelps assumed office in January, 2008,
replacing former Warden Thomas Carroll, an original party to this
case.  See Fed. R. Civ. P. 25(d)(1).

Farnan, District Judge.

Pending before the Court is an Application for a Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") filed by
Petitioner, Norman X. Becker.  (D.I. 1;  D.I. 21.)  Petitioner is
incarcerated at the James T. Vaughn Correctional Center in
Smyrna, Delaware.  For the reasons discussed, the Court will
dismiss the Petition and deny the relief requested.

## I.   BACKGROUND

On October 20, 2004, at approximately 3:45 p.m., Petitioner
walked into the Wilmington Trust Company building at 1001 N.
Market Street, Wilmington, Delaware.  He gave a teller named D.M.
a blank deposit slip with the words "give me all of your money
now" written on the back.  Petitioner then moved his right hand
back towards his hip as if he had a weapon in his pocket.  D.M.
handed Petitioner a number of bills, which Petitioner placed in
his pockets.  As he was leaving the bank, Petitioner apologized
to D.M.  Becker v. State, 913 A.2d 569 (Table), 2006 WL 3604828,
at *1-2 (Del. Dec. 12, 2006).

A few blocks from the bank, Petitioner approached a pick-up
truck parked at the corner of 9th and Shipley Streets.  Sitting
in the truck was C.V., a building contractor who had been working
at a nearby office building.  Petitioner, looking "crazed," and
tried to pull C.V. out of the truck, saying that he had just
robbed a bank, had a gun, and would kill C.V. if he didn't get

1

out of the truck. During the struggle, Petitioner pushed C.V. out of the way and jumped into the cab of the truck behind the steering wheel. A maintenance worker from the building where C.V. had been working ran over, pulled Petitioner out of the truck, and held him down until a City of Wilmington police officer arrived. The officer did not find a weapon, and described Petitioner as being "incoherent" at the time of his arrest. After recovering $2,785.00 from Petitioner, which was the exact amount stolen from the bank, the officer accompanied Petitioner to the bank, where the teller identified Petitioner as the robber. Id.

Petitioner was subsequently indicted on two counts of first degree robbery and one count of first degree attempted carjacking. Petitioner was tried before a Delaware Superior Court jury in September 2005. (D.I. 12.) During the trial, Petitioner's latent fingerprint from the deposit slip that had been handed to the teller was admitted into evidence, as well as security photographs from Wilmington Trust showing Petitioner at the teller's window during the course of the robbery. Petitioner testified at trial, stating that he went to the bank in order to rob it and that he was hearing voices at the time. He attempted to testify concerning his history of mental illness, but the State objected on the ground of relevance and the judge sustained the objection. Becker, 2006 WL 3604828, at *1-2.

The jury convicted Petitioner on two counts of first degree robbery and one count of first degree attempted carjacking. Id. at *1. Petitioner was sentenced as an habitual offender to life imprisonment on one of the first degree robbery convictions, and to an aggregate of fifteen years at Level V incarceration, suspended after ten years for probation, on the remaining convictions. Id. Petitioner appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentences. Id. at *3.

Petitioner timely filed the pending Section 2254 Petition asserting two claims. (D.I. 1.) Petitioner then timely filed in the Delaware Superior Court a motion for state post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. See (D.I. 13, Motion for Postconviction Relief.) Given Petitioner's pending Rule 61 proceeding, Respondents filed an Answer contending that Petitioner had presented the Court with a mixed Petition that must be dismissed without prejudice in order to allow Petitioner to present his unexhausted claim to the Delaware state courts. (D.I. 12.)

In March 2009, the Court issued a Memorandum Opinion concluding that the Petition was mixed because it contained both exhausted and unexhausted claims. (D.I. 19; D.I. 20.) The Court explained that it would dismiss the Petition without prejudice to enable Petitioner to exhaust state remedies unless

3

he opted to withdraw the unexhausted habeas claim. (D.I. 19; D.I. 20.) Soon thereafter, Petitioner informed the Court that he wished to withdraw the unexhausted ineffective assistance of counsel claim and proceed on the remaining exhausted habeas claim. Accordingly, the Court will review the single claim remaining in the Petition.

## II. STANDARD OF REVIEW

As a prerequisite to federal habeas review, a petitioner must exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider them on the merits. See Duncan v. Henry, 513 U.S. 364, 365 (1995); Castille v. Peoples, 489 U.S. 346, 351 (1989); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

When a state's highest court has adjudicated a federal

4

habeas claim on the merits,[2] the federal court must review the
claim under the deferential standard contained in 28 U.S.C. §
2254(d). Pursuant to Section 2254(d), federal habeas relief may
only be granted if the state court's decision was "contrary to,
or involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States," or the state court's decision was an unreasonable
determination of the facts based on the evidence adduced in the
trial. 28 U.S.C. § 2254(d)(1) & (2); Williams v. Taylor, 529
U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.
2001).

In a habeas proceeding, a federal court must presume that
the state court's determinations of factual issues are correct.
28 U.S.C. § 2254(e)(1). This presumption of correctness applies
to both explicit and implicit findings of fact, and is only
rebutted by clear and convincing evidence to the contrary. 28
U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d
Cir. 2000); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)
(stating that the clear and convincing standard in § 2254(e)(1)
applies to factual issues, whereas the unreasonable application
standard of § 2254(d)(2) applies to factual decisions).

---

[2]A state court decision constitutes an adjudication on the
merits for the purposes of § 2254(d), if the decision finally
resolves the claim on the basis of its substance, rather than on
a procedural or some other ground. Thomas v. Horn, 570 F.3d 105,
115 (3d Cir. 2009).

## III.  DISCUSSION

In his Section 2254 Petition, Petitioner contends that the trial court erred in denying his request to assert the defense of "not guilty by reason of insanity" and to present additional evidence of his mental illness during the trial.  In addition to this Claim, which is based on the Compulsory Process Clause of the Sixth Amendment, the Court also understands Petitioner to be alleging a general violation of his Sixth Amendment right to present a complete defense.  Based on the cases cited in Petitioner's "Memo of Case Law," the Court further understands Petitioner to be asserting an argument that his Due Process rights were violated when the trial court presumed his competence to stand trial and refused to conduct a further inquiry into his competence.  (D.I. 1, Memo of Caselaw.)

A liberal reading of the record reveals that Petitioner presented all three arguments as Federal constitutional issues to the Delaware Supreme Court on direct appeal.[3]  Although the Delaware Supreme Court did not address these arguments in terms of constitutional principles, the Court concludes that the

---

[3]For instance, although inartfully presented, Petitioner's Rule 26 appellate brief asserted that he was denied due process because his "mental health was not challenged."  (D.I. 14, Appellant's Br. Under Rule 26(C), in Becker v. State, No.148,2006.)  Petitioner also argued that the Superior Court erred by not permitting him to mention his mental health issues during the trial and that he was not taking his medications on the day he committed the crimes.  Id.

Delaware Supreme Court's denial of Petitioner's appellate claim

as factually meritless constituted an adjudication on the merits

for the purposes of Section 2254(d).⁴ Therefore, the Court may

only grant habeas relief if it determines that the Delaware

Supreme Court's decision was contrary to, or an unreasonable

application of, clearly established Federal law, or that the

State Supreme Court's was an unreasonable determination of the

facts based on the evidence presented at trial.⁵

---

⁴In Early v. Packer, 537 U.S. 3, 8 (2002), the United States
Supreme Court opined that the right to deferential review under
the AEDPA does not require citations to federal cases. Indeed,
it does not even require awareness of federal cases, "so long as
neither the reasoning nor the result of the state court decision
contradicts them." Id. Although the Delaware Supreme Court did
not cite federal cases in its review of Petitioner's claims, it
did explain that a psychologist had evaluated Petitioner for
competency at the request of the trial court, and that the
psychologist concluded that Petitioner "was not only competent to
stand trial, but was also sane at the time he committed the
charged offenses." Becker, 2006 WL 3604828, at *2. The Delaware
Supreme Court also noted that Petitioner independently asserted
his defense of "not guilty by reason of insanity at the time of
the crime" on the day of the trial, and that during the trial
court's subsequent colloquy with defense counsel, counsel stated
that there was no factual basis for an insanity defense. Id.
The Delaware Supreme Court then concluded that the trial court
did not err in denying Petitioner's request to assert the
affirmative defense of "not guilty by reason of insanity" or by
preventing Petitioner from presenting his history of mental
health problems because there was no factual basis for the
defense.

⁵If the Delaware Supreme Court's decision does not
constitute an adjudication on the merits for federal habeas
purposes, the Court must apply the pre-AEDPA standard and review
the sub-arguments contained in the instant habeas claim de novo.
See Holloway v. Horn, 355 F.3d 707, 718-19 (3d Cir. 2004). De
novo review means that the court "must exercise its independent
judgment when deciding both questions of constitutional law and

7

## A. Due Process And Competency To Stand Trial

It is well-settled that a defendant has a due process right not to be tried while incompetent. Drope v. Missouri, 420 U.S. 162, 171-72 (1975); Pate v. Robinson, 383 U.S. 375, 385 (1966). A defendant is competent to stand trial when he has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and he possesses a "rational as well as factual understanding of the proceedings against him." Dusky v. United States, 360 U.S. 402 (1960). The Supreme Court has identified several factors to be considered when assessing a defendant's competency to stand trial including attorney representations, prior medical opinions regarding the defendant's mental competence to stand trial, evidence of the defendant's prior irrational behavior, and the defendant's demeanor at trial. Drope, 420 U.S. at 177 n.13, 180. However, "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change" in his competency. Id. at 181. Consequently, in order to satisfy the requirements of due process, a trial court must sua sponte conduct a competency hearing when there is a reason to

---

mixed constitutional questions." Williams v. Taylor, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring). However, even reviewing the three sub-arguments of the claim de novo, the Court concludes that Petitioner is not entitled to relief, because, as explained in the text of this Memorandum Opinion, Petitioner has failed to establish a violation of the Due Process or Compulsory Process Clauses.

doubt the defendant's competency and the evidence is sufficient to put the trial court on notice of a potential competency problem. Pate, 383 U.S. at 385.

After reviewing the record, the Court concludes that the trial judge did not violate Petitioner's right to due process by not conducting a competency hearing or ordering further psychological evaluation of Petitioner. Prior to trial, the trial court requested a psychological evaluation of Petitioner, which was completed by Dr. Charlotte Selig. Dr. Selig noted Petitioner's mental health history, including suicide attempts, a history of drug and alcohol abuse, a childhood diagnosis of a seizure disorder, and an adult diagnosis of Schizoaffective Disorder. However, based on her evaluation of Petitioner, Dr. Selig concluded that Petitioner's symptoms were indicative of Antisocial Personality Disorder and not Schizophrenia. (D.I. 14, Appellant's Br. in Becker v. State, No. 148, 2006 at pp. 7-8.) Dr. Selig expressly concluded that Petitioner was competent to stand trial.

Although Petitioner requested another psychiatric evaluation during the pre-trial colloquy, the purpose of his request was to determine if he was mentally ill when he committed the crimes, not to determine his competency to stand trial. Indeed, Petitioner informed the court that his mind "[wa]s focused now." In addition, Petitioner's defense counsel stated during the pre-

trial colloquy that he believed Petitioner was competent to stand trial.

The record further reflects that the trial court remained alert to the issue of Petitioner's competency throughout the course of the trial. For instance, the trial judge asked defense counsel if there was any indication that Petitioner did not understand the "nature and significance of his rights at this point in the process." Id. Defense counsel responded that

> I've had no indication that he isn't aware of what's going on and the significance of it. And he's able to communicate with me. I think he understands me. I understand him. If anything, the questions that he's asked me and his response to them would indicate that he's – the medications are allowing him to think pretty clearly, actually. The obstacle here isn't whether or not he understands or is not thinking straight about what he wants to tell this jury, it's the barriers that I have as a lawyer and an officer of the Court.[6] . . . But I don't think there's much issue at all as to his competency. And I'll point out for the Court that the first three medications that he mentions are psychotropic antipsychotics. The last one is . . . a mood disorder drug . . . and they seem to be working effectively in terms of allowing him to function within normal range.

Id. at A-51. The trial judge also asked Petitioner if he had

---

[6]Counsel's remark regarding the barriers faced as an officer of the court appears related to the statement counsel made to the trial court at the beginning of the pre-trial colloquy that Petitioner's mental illness did not satisfy the standard for asserting the defense "not guilty by reason of insanity." (D.I. 14, App. to Appellant's Br. in Becker v. State, No.148,2006, at A-8.) During the court's pre-trial colloquy, counsel specifically stated that, "being mentally ill in and of itself, even though you may be very mentally ill, does not make you not guilty by reason of insanity. The standard is a very, very high one to meet. I don't believe it's met in this case, and I can't make a good faith pleading to the court that I can present a case to justify it." Id.

taken any drugs or alcohol in the last 48 hours, to which Petitioner responded that he had taken Haldol, Thorazine, Cogentin, and Lithium. Id. The judge then asked if Petitioner understood the consequences of what he was doing. In response, Petitioner complained about certain statements made by defense counsel, the prosecutor, and the judge which he interpreted to be about hurrying the trial so that they could go to lunch and play golf together. The judge explained that lunch had been shortened the day before in order to hear witnesses and start with testimony. The judge also explained that, while he had talked about golf, he did not play the sport, and that nobody was in any hurry. Id. at A-51, A-52. Petitioner then complained about counsel's failure to call witnesses from the Veteran's Administration ("VA") Hospital for his defense. Id. The trial judge replied that,

> [W]e talked about the witnesses and the medical issue and the emotional issue. And it is what it is [Petitioner]. And he [defense counsel] can't go beyond certain restrictions. So, I mean, I understand and you have that point that you can argue, but it's not particularly persuasive now. And there's no information to back up the fact that you were to – sufficient to establish that you were insane at the time of the offense was committed if you, in fact, admit committing the offense, which I'm not asking you about one way or the other.

>          *            *             *

> At this point, [Petitioner], you have to raise everything in your mind that will ultimately help you given the consequences. My personal opinion is that it's not going to be particularly persuasive, but you're free to say it. . . .

11

> It is clear to me that you've thought out a certain
> strategy, and it's also clear to me that you've understood
> what [defense counsel] has said to you.  Now, whether you've
> related it accurately is a different story.  I don't think
> [defense counsel] said the things that you said,[7] but
> whether he did or didn't, you've at least been able to
> articulate them, understand what you wanted to say and what
> you wanted to relate to me.  **So it seems to me competency is
> not an issue.**

Id.  (emphasis added)

In this proceeding, the Court must presume as correct the

trial court's factual finding that Petitioner was competent to

stand trial, because Petitioner has not rebutted that

presumption with clear and convincing evidence.  See Fahy v.

Horn, 516 F.3d 169, 181 (3d Cir. 2008) ("competency is a state

court factual finding that, if supported by the record, is

presumed correct.")  Additionally, the Court is persuaded that

the record independently demonstrates that the trial court did

not have a bona fide basis to doubt Petitioner's competence to

stand trial.  Accordingly, the Court concludes that the

Delaware Supreme Court's decision affirming the trial court's

judgment that no additional competency evaluation was

necessary was neither contrary to, nor an unreasonable

---

[7]According to Petitioner, counsel told him that if he took
the witness stand, the prosecutor would object to whatever he
said.  Id. at A-50.  In response, counsel explained that
Petitioner "advised me what it is he thinks this jury needs to
hear from him.  And I've made the decision that in response to
his question, I've not told him not to say it, that I believe it
will draw an objection, and my considered opinion is that the
objection will be sustained."  Id.

application of, clearly established Federal law, nor did it involve an unreasonable determination of the facts based on the evidence adduced in the trial.

## C.    Trial Court's Denial Of "Not Guilty By Reason Of Insanity" Defense And Additional Psychological Evidence

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986).  For instance, "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  The Compulsory Process Clause also guarantees a defendant the right to present a meaningful defense during a criminal trial[8] by providing a defendant the right to present favorable witnesses and evidence, as well as the "compulsory process" for obtaining such witnesses and evidence. Government of the Virgin Islands v. Mills, 956 F.2d

---

[8]See Taylor v. Illinois, 484 U.S. 400, 408-09 (1988); Chambers v. Mississippi, 410 U.S. 284, 294 (1973).

13

443, 445 (3d Cir. 1992). Specifically, the Compulsory Process Clause "protects the presentation of the defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling by the trial judge." Id. Because the right to Compulsory Process is made applicable to the States through the Fourteenth Amendment, a violation of the right also constitutes a violation of Due Process. Washington v. Texas, 388 U.S. 14, 17-19 (1967). Thus, "[t]here is apparently little, if any, practical difference in the analysis" under the Due Process or Compulsory Process Clauses. Mills, 956 F.2d at 446 n.4.

Petitioner contends that the trial court violated his Constitutional right to present a complete defense by denying his request to assert the affirmative defense "not guilty by reason of insanity," and by denying his request to present additional psychological evidence. The Court will address each of Petitioner's arguments in turn.

## 1. "Not Guilty By Reason Of Insanity"

A competent defendant has the "ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Jones v. Barnes, 463 U.S. 745, 751 (1983). Because these rights are constitutionally

14

guaranteed personal rights of the defendant, they can only be waived by the defendant in a knowing and voluntary manner. In contrast, deciding what arguments to pursue and the defenses to develop are viewed as tactical and strategic issues which defense counsel has the ultimate authority to decide. See Hill, 528 U.S. at 115; Wainwright v. Sykes, 433 U.S. 72, 93 & n.1 (1977)(Burger, C.J., concurring).

Under Delaware law, "not guilty by reason of insanity" is considered an affirmative defense, and not a plea or a fundamental right.[9] See Del. Code Ann. tit. 11, § 401(a). Accordingly, the defendant bears the burden of raising "some evidence" regarding the defense.[10] United States v. Lawrence, 349 F.3d 109, 122 (3d Cir. 2003). If the defendant is unable to produce "some evidence" of an affirmative defense, the defense cannot be used during trial. See Matthews v. United States, 485 U.S. 58, 63 (1988).

Because "not guilty by reason of insanity" is considered

---

[9]Delaware Code Annotated, tit. 11, § 401(a), provides, in relevant part, that "it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness or mental defect, the accused lacked substantial capacity to appreciate the wrongfulness of the accused's conduct. If the defendant prevails in establishing [this] affirmative defense, . . . the trier of fact shall return a verdict of "not guilty by reason of insanity."

[10]See Simopoulos v. Virginia, 462 U.S. 506 (1983)(defendant has burden of going forward on necessity defense); United States v. Bailey, 444 U.S. 394, 425-26 (1980)(defendant bears burden of production on defenses of duress and necessity).

15

an affirmative defense, the Court cannot conclude that the
trial court per se violated a personal right guaranteed
Petitioner by the Constitution. In reaching this decision,
the Court recognizes the Delaware Supreme Court's recent
decision in Cooke v. State, - A.2d -, 2009 WL 2181678 (Del.
July 21, 2009), but finds it to be distinguishable from this
case. In Cooke, the Delaware Supreme Court held that the
decision to concede guilt by pleading "guilty but mentally
ill" implicates inherently personal rights, the exercise of
which cannot be left to anyone other than the defendant.
Unlike this case, Cooke was a capital case involving
ineffective assistance of counsel. Further, unlike the
affirmative defense of "not guilty by reason of insanity," a
"guilty but mentally ill" plea implicates a defendant's
fundamental right to plead not guilty. In Cooke, the
defendant's attorneys' overrode Cooke's decision to plead not
guilty despite his competence to stand trial, by advising the
trial judge, over Cooke's objection, that they would ask the
jury to find Cooke guilty but mentally ill. As the Delaware
Supreme Court acknowledged, the problem with defense counsel's
conduct in Cooke was that "Cooke's fundamental right to enter
a plea of not guilty was effectively negated by the
conflicting objective of his defense attorneys to have the
jury find him guilty but mentally ill." Id. at 834. This

16

conduct resulted in Petitioner being denied the reasonable doubt standard and meaningful adversarial testing of the prosecutions' case. Unlike Cooke, Petitioner in this case pled not guilty, and his inability to pursue a "not guilty by reason of insanity" defense did not alter his plea and did not deny him the reasonable doubt standard or meaningful adversarial testing of the prosecution's case.

In addition, the Court concludes that the Delaware Supreme Court's decision to deny Petitioner's request to proceed with the affirmative defense "not guilty be reason of insanity," was not contrary to, or an unreasonable application of, clearly established Federal law. Specifically, the trial court denied Petitioner's attempt to raise the affirmative defense of "not guilty by reason of insanity" on the grounds that the defense was untimely and factually baseless. In affirming the trial court's denial of Petitioner's affirmative defense, the Delaware Supreme Court did not discuss United States Supreme Court precedent. Consequently, when evaluating the Delaware Supreme Court's decision under the "contrary to" prong, the Court must determine if the Delaware Supreme Court contradicted or took a position in its decision that was explicitly inconsistent with prevailing Supreme Court decisions. Fischetti v. Johnson, 384 F.3d 140, 150 (3d Cir. 2004).

The Supreme Court has indicated that a defendant's right to a complete defense does not include the right to assert affirmative defenses; however, the Supreme Court has not explicitly considered the exact issue raised in this case. See e.g. Gilmore v. Taylor, 508 U.S. 333, 343 (1993) (considering the Court's prior decisions on the meaningful opportunity to present a complete defense and noting that the cases "dealt with the exclusion of evidence [] or the testimony of defense witnesses" and not "restrictions imposed on a defendant's ability to present an affirmative defense"). Accordingly, because the Supreme Court has "never faced the precise issue presented in this case," the Court cannot conclude that the Delaware Supreme Court's denial of Petitioner's affirmative defense was contrary to clearly established Supreme Court precedent.[11]   Thomas v. Carroll, 581

_____

[11]As an aside, the Court notes that state courts appear to be split as to whether a defendant's right to assert a complete defense includes his ability to present an affirmative defense. For instance, many state courts addressing the issue have held that defense counsel cannot force a defendant to assert the affirmative defense "not guilty by reason of insanity" against his will because of the long-term consequences of succeeding with such a defense, nor can counsel compel a defendant to abandon an insanity defense merely because counsel disagrees with the tactics of that decision.   See People v. Henning, 100 Cal. Rptr. 419, 426 (Cal. App. 3 Dist. 2009); State v. Bean, 762 A.2d 1259 (Vt. 2000); Treece v. Maryland, 547 A.2d 1054 (Md. 1988)(viewing what the state called the affirmative defense of not criminally responsible as a plea of not criminally responsible)(citing cases)(emphasis added).   In contrast, focusing on the fact that a defense of "not guilty by reason of insanity" concedes factual guilt but argues against criminal responsibility, some state

18

F.3d 118, 124 (3d Cir. 2009). In addition, where, as here,

the applicable Supreme Court cases do not "squarely address"

or give a "clear answer to the issue presented," the Court

cannot conclude that the Delaware Supreme Court unreasonably

applied Supreme Court precedent in affirming the trial court's

denial of Petitioner's affirmative defense.[12]   See Wright v.

---

courts have interpreted Florida v. Nixon, 543 U.S. 175 (2004) as
allowing counsel to use the insanity defense without the
defendant's consent because determining whether to assert the
defense constitutes a tactical decision.   Holland v. State, 916
So. 2d 750 (Fla. 2005), cert. denied, 126 S.Ct. 1790 (2006).

[12]Pursuant to the doctrine enunciated by the Supreme Court
in Chambers, a defendant's right to assert a complete defense may
permissibly be limited by "established rules of procedure and
evidence designed to assure both fairness and reliability in the
ascertainment of guilt and innocence," so long as the procedural
or evidentiary rules are not "applied mechanistically to defeat
the ends of justice" or deprive the defendant of a fair trial "in
circumstances where constitutional rights directly affecting the
ascertainment of guilt are implicated."   Chambers, 410 U.S. at
302, 303.   Although Chambers does not "squarely address" the
issue of affirmative defenses, an analysis of Petitioner's
argument under the doctrine established therein provides
additional support for the Court's conclusion that the instant
Claim does not warrant habeas relief under § 2254(d)(1).   For
instance, in Delaware, the procedural limitations placed on
raising the affirmative defense of "not guilty by reason of
insanity" are articulated in Delaware Superior Court Criminal
Rule 12.2(a), which requires "a defendant who intends to rely
upon the defense of insanity at the time of the alleged offense"
to "notify the attorney general in writing of such intention and
file a copy of such notice with the prothonotary" "within the
time provided for the filing of pretrial motions or at such later
time as the court may direct."   In this case, Petitioner did not
directly inform the trial court of his desire to assert an
insanity defense until the first day of trial, and his pro se
letter explaining his intent to assert the insanity defense,
filed with the trial court only five working days prior to trial,
also failed to satisfy the "timely notice" requirements of Rule
12.2(a).   See, e.g., Gov't of Virgin Islands v. Knight, 989 F.2d

Van Patten, 552 U.S. 120, 126 (2008).

Moreover, in examining the record as it relates to the trial court's assertion that there was no factual basis to support a "not guilty by reason of insanity defense," the Court finds no error in the trial court's determination. There is no evidence in the record demonstrating that Petitioner could not tell right from wrong at the time of the robbery.  In fact, Petitioner apologized to the teller for committing the robbery, which demonstrates that Petitioner did not lack "substantial capacity to appreciate the wrongfulness of [his] conduct" as the result of a mental illness of defect. Accordingly, the Court finds no basis upon which to grant

_____

619, 626 (3d Cir. 1993)(finding that Federal Rule of Criminal Procedure 12.2 contains an implicit requirement that a defendant file a notice of intent to raise an insanity defense within a reasonable time, and that a notice of intent filed three days prior to trial was unreasonable); Melendez v. State, 947 A.2d 1122 (Table), 2008 WL 187950, at *3 (Del. 2008)(implicitly holding that Delaware Superior Court Criminal Rule 12.2(b) imposes a "reasonableness" factor on the timely notice requirement, and notice of intent filed five days before trial was untimely).  Viewing these facts in conjunction with the trial court's entire pre-trial colloquy with Petitioner, the Court is persuaded that the trial court did not mechanistically apply Rule 12.2 in rejecting Petitioner's affirmative defense of "not guilty by reason insanity" as untimely.  Thus, even if a defendant's right to present a complete defense includes the right to present affirmative defenses, the Court concludes that the Delaware Supreme Court did not unreasonably apply Supreme Court precedent in affirming the trial court's denial of Petitioner's insanity defense as untimely asserted.

Petitioner's claim that his constitutional rights were violated by the trial court's decision to preclude him from asserting the "not guilty by reason of insanity" defense.

## 2. **Additional Psychological Evidence**

Petitioner next contends that the trial court denied his due process and compulsory process rights by denying his request to present additional pyschological evidence to the jury. Specifically, Petitioner sought to introduce evidence that he was presently being housed in a mental health unit and his cell-mate had just died. Petitioner also sought to introduce "favorable" testimony from his doctors at the VA Hospital. (D.I. 14, App. to Appellant's Br. in Becker v. State, No.148,2006 at p. A-57.)

A defendant has the right to testify on his own behalf and the right to call witnesses on his own behalf,[13] but a defendant does not have "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410 (1988). Restrictions placed on a defendant's presentation of testimony and evidence will not offend Due Process or the Compulsory Process Clause, unless the excluded evidence was material and substantial and the

---

[13]Rock v. Arkansas, 483 U.S. 44, 56 (1987); Chambers, 410 U.S. at 294.

21

restrictions were arbitrary or disproportionate to any legitimate evidentiary or procedural purpose. Rock v. Arkansas, 483 U.S. 44, 56 (1987) Id. at 56. Evidence is material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." Mills, 956 F.2d at 446.

After reviewing Petitioner's contentions within the framework established by Rock, the Court concludes that the Delaware Supreme Court's affirmance of the trial court's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Although the trial court denied Petitioner's request to testify about his psychological problems or assert the defense "not guilty by reason of insanity," Petitioner did, in fact, testify that he went to the bank because he was having "problems mentally," and that he was "hearing voices at the time and his mindset was completely off balance." Petitioner also testified that, at the time of the crimes, he was "unfocused," "thought it was the end of the world," and his "emotions were completely out of control." (D.I. 14, App. to Appellant's Br. in Becker v. State, No. 148,2006, at A-57.)

In addition, Petitioner has failed to demonstrate that his excluded testimony, or the "excluded" testimony of his physicians, was material and favorable. For example, the

death of Petitioner's cell mate and his placement during
incarceration in a mental health unit is irrelevant to his
sanity at the time he committed the offense. Petitioner also
proffers no evidence concerning the content of the testimony
he sought from his VA doctors. Accordingly, the Court cannot
conclude that there was a reasonable probability that the
"excluded evidence" about which Petitioner complains would
have changed the jury's verdict.

In sum, the Court is persuaded that Petitioner's right to
testify and his right to present witnesses on his behalf were
not abridged, but rather were subject to the reasonable
application of Delaware's procedural and evidentiary rules.
Accordingly, the Court concludes that the Delaware Supreme
Court's decision affirming the trial court's exclusion of
Petitioner's additional psychological evidence was neither
contrary to, nor an unreasonable application of, the clearly
established Supreme Court precedent.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a §
2254 petition, the court must also decide whether to issue a
certificate of appealability. See 3d Cir. L.A.R. 22.2 (2008).
A certificate of appealability is appropriate when a
petitioner makes a "substantial showing of the denial of a
constitutional right" by demonstrating "that reasonable

jurists would find the district court's assessment of the
constitutional claims debatable or wrong." 28 U.S.C. §
2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas Claim
does not warrant relief. Reasonable jurists would not find
its assessment of the constitutional claims debatable or
wrong. Therefore, the Court will not issue a certificate of
appealability to determine whether Petitioner's constitutional
right to a fair trial was violated when the Superior Court
prevented him from pursing a "not guilty by reason of
insanity" defense.

## V.  CONCLUSION

For the reasons discussed, Petitioner's Application For A
Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be
denied.

An appropriate Order will be entered.